**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **GULF UNDERWRITERS** ) | |
| **INSURANCE COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 1:05cv875** |
| ) | |
| **KSI SERVICES, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

**<u>MEMORANDUM OPINION</u>**

In this diversity declaratory judgment action, an insurer seeks a declaration that an errors

and omissions policy provides no coverage to an entity claiming to be a third-party beneficiary of

the policy by virtue of the operation of an exclusion barring coverage for an insured's dishonest

or criminal acts.

For the reasons that follow, the declaration must issue.

**I.**

The material facts are undisputed and may be succinctly stated.[1]  Plaintiff, Gulf

Underwriters Insurance Company ("Gulf"), is a Connecticut corporation engaged in the insurance

business with its principal place of business in New York.  Gulf issued a Specialty Errors and

Omissions Liability Insurance policy, Policy No. GU6617675 A ("Policy"), to Merit Title, L.C.

---

[1]The facts recited here are those derived from the record as a whole, and are essentially
undisputed.  *See Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)
(holding that on motion for summary judgment, where material facts are in dispute, all
reasonable inferences must be drawn in favor of the non-moving party).

("Merit"), a now-defunct escrow services firm with its principal place of business in Fairfax,

Virginia.  KSI Services, Inc. ("KSI") is a Virginia corporation engaged in real estate development

with its principal place of business in Virginia.

In various transactions between 1999 and 2003, KSI placed approximately $1.1 million in

escrow with Merit.  Margaret Dean, then Merit's bookkeeper, embezzled from Merit a total of

approximately $1.4 million in more than 130 separate instances between 1999 and 2003.  Dean

was subsequently arrested and charged with felony embezzlement.  She pled guilty on July 20,

2004, admitting the elements and particulars of the embezzlement charge.  Merit then sued Dean

and her husband in Fairfax County Circuit Court *inter alia*, for breach of fiduciary duty,

conversion, fraud, and unjust enrichment.  Dean and her husband did not defend, and Merit

obtained a default judgment on December 19, 2003 in the amount of approximately $1.1

million.[2]  Notwithstanding the judgment, Merit was unable to recover the bulk of the outstanding

embezzled funds from Dean and her husband, and consequently went out of business on July 19,

2004.  KSI, therefore, did not recover the money it had placed in escrow with Merit.

Casting about for a means to recover the lost escrowed funds, KSI fastened on the Policy

Gulf issued to Merit.  Specifically, KSI seeks satisfaction from Gulf as a third-party beneficiary

of the Policy Gulf issued to Merit for losses it alleges were caused by Merit's negligent

---

[2]As of the time of the judgment, Merit had been able to recover only $354,649.39, which
the Fairfax County Circuit Court took into account in determining the amount of the default
judgment.  Merit did not recover this amount in cash; rather, this reflects the state circuit court's
valuation of property seized from the Deans and sold in partial satisfaction of KSI's default
judgment against Dean and her husband.

supervision of Dean.[3]  Gulf contends that two Policy exclusions independently bar recovery

under the Policy.  First, while the Policy insured Merit against "wrongful acts"[4] committed by an

"insured," which the Policy defined as "Merit, L.C., Merit's partners, officers, directors, or

employees insofar as they were acting within the scope of their job duties," it specifically

excluded coverage for dishonest acts, and noted that:

> ... Damages or Claim Expenses ... arising directly or indirectly out of ... [a]n act or
> omission that a jury, court or arbitrator finds dishonest, fraudulent, criminal,
> malicious, or was committed while knowing it was wrongful.  ("Dishonesty
> Exclusion")

> Second, the Policy also excluded from coverage "Damages or Claim Expenses ... for the

breach of express warranties, guarantees or contracts."  ("Breach of Contract Exclusion").  Given

these Policy provisions, the question presented is whether, as a matter of law, either Policy

exception bars coverage for Merit's losses.

---

[3]Neither raised nor argued, and hence not decided here, is whether KSI can successfully
claim third party beneficiary status in this case.  Under Virginia law, a party claiming recovery on
a third-party beneficiary theory for breach of contract must show that the parties to the contract
"clearly and definitely intended" to confer a benefit upon KSI.  *See, e.g.*, *Allen v. Lindstrom*, 237
Va. 489, 500 (1989).  Put differently, a person who benefits only incidentally from a contract
between others cannot sue thereon.  The essence of a third-party beneficiary's claim is that others
have agreed between themselves to bestow a benefit upon the third party, but one of the parties to
the agreement fails to uphold its part of the bargain.  *Copenhaver v. Rogers*, 238 Va. 361, 367
(1989).  It is unclear whether KSI meets Virginia's third party beneficiary standard in this case.

[4]Section 6.L. of the Policy defined "wrongful acts" in pertinent part as follows:

"Wrongful act" means the following conduct or alleged conduct by [an insured] or
any person or organization for whom [the insured] are legally liable:

1.  A negligent act, error, or omission...

**II.**

Virginia law[5] is clear and well-settled on the governing standard for interpreting contracts, including insurance policies: Virginia strictly adheres to the "plain meaning" rule, meaning that "[w]here an agreement is complete on its face and is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself ... because the writing is the repository of final agreement of the parties." *See Pacific Insurance Co. v. American National Fire Insurance Co.*, 148 F.3d 396, 405 (4th Cir. 1998) (quoting *Lerner v. Gudelsky Co.*, 230 Va. 124 (1985)); *Schneider v. Continental Casualty*, Co. 989 F.2d 728, 731 (4th Cir. 1993) (applying *Lerner* and the "plain meaning" rule to the insurance policy context). Thus, the analysis in this case properly begins with the language of the Policy, and ends there where, as here, the pertinent Policy language has a clear and unambiguous plain meaning.

The Dishonesty Exception to coverage under the Policy makes clear that Gulf has no liability under the Policy for losses arising out of criminal conduct of an "insured." While it is undisputed that Dean was employed by Merit when she committed the embezzlement at issue, and that her crime was the actual cause of Merit's inability to repay KSI the money held in escrow on KSI's behalf, it is hotly disputed whether Dean was an "insured" under the Policy. Nor is this an inconsequential dispute; if Dean is an "insured" under the Policy, the Dishonesty

---

[5]The parties correctly do not dispute jurisdiction or venue; there is complete diversity between the parties, the amount in controversy exceeds $75,000, and KSI resides here. *See* 28 U.S.C. § 1332; *see also* 28 U.S.C. § 1391(a). As this is a diversity suit, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941), teaches that forum state law, including forum state choice of law rules, governs the substantive claims. It is equally clear that under Virginia law, the law of the place where an insurance contract is written and delivered—here, Virginia—controls the interpretation of policy language and hence the coverage issues. *See Buchanan v. Doe*, 246 Va. 67 (1993).

Exception bars recovery.  And in this regard, the Policy defines an "insured" as including "employees insofar as they were acting within the scope of their job duties."  The question, then, is whether Dean was acting within the scope of her job duties when she committed the embezzlement at issue.

The question of what acts fall within the scope of an employee's duties has long been grist for the litigation mill.  Courts in Virginia and elsewhere have wrestled with this question not always reaching uniform results.  In general, courts in Virginia and elsewhere identify several factors that must be considered in determining whether an employee's acts fall within the scope of the employee's job duties.  Those factors are: (i) the extent to which the employee was motivated by a desire to serve the employer in engaging in the tortious conduct; (ii) whether the tortious conduct was committed during the time the employee was on duty; (iii) whether the tortious conduct was committed while the employee was on the employer's premises or on premises where the employee's duties would naturally cause the employee to go; and (iv) the extent to which the impetus for the tortious conduct was causally related to the employee's employment.  *See, e.g., Gina Chen*, 260 Va. at 533, 542-46 (2000).[6]  While there is some general agreement that these are the relevant factors to be considered, there is less agreement on the relative importance of each factor.

In this regard, states are sharply divided over the amount of emphasis to be placed on each factor: Some states look primarily to the employee's motivation for committing the tort[7];

---

[6]*See also* cases cited in Rest. 2d, Agency § 229 and cases cited in 17 CAUSES OF ACTION § 647 (2005).

[7]*See, e.g.*, *Richard v. Hall*, 874 So.2d 131, 140 (La. 2004) (embracing employee motivation approach); *Cockrell v. Pearl River Valley Water Supply District*, 865 So.2d 357, 361

others lend more weight to various objective factors.[8]   Under the employee motivation approach,

the critical inquiry is whether and to what extent the employee's tortious action was motivated by

a desire to benefit his employer.  The remaining factors are relevant, but not essential.  Under this

approach, liability is typically imposed only if the employee was motivated, at least in part, by a

desire to serve the employer.[9]

Under the totality of the circumstances approach, an employee's subjective motivation for

committing the tort is relevant, but not essential to a finding that the employee was acting within

the scope of employment.  Rather, the inquiry is a more objective one, focusing chiefly on

whether the tortious or intentional wrongful conduct was sufficiently related in time, place, and

causation to the employee's duties to be attributable to the employer's business.[10]   The question,

then, is which approach Virginia follows.

It is easier to say which approach Virginia does not follow than to say which one it does.

In *Gina Chin*, the Supreme Court of Virginia made clear that Virginia has rejected the employee

motivation approach.  *See Gina Chen*, 260 Va. at 541.  *Gina Chen* involved a First Union

---

(Miss. 2004) (same); *City of Miami v. Simpson*, 172 So.2d 435, 437 (Fla. 1965) (same);
*Rubin v Yellow Cab Co.*, 154 Ill.App.3d 336, 338 (1987) (same); *Burch v A & G Associates Inc.*,
122 Mich.App 798, 804 (1983) (same); *Taylor v Doctors Hospital (West)*, 21 Ohio App.3d 154,
156-57 (1985) (same); *Condict v Condict*, 664 P2d 131, 135 (Wyo. 1983) (same).

[8]*See, e.g.*, *Martinez v Hagopian*, 182 Cal.App.3d 1223, 1227-28 (1986) (embracing
totality of circumstances approach); *Draper v Olivere Paving & Construction Co.*, 54 Del. 433,
442 (1962) (same); *Hern v Heckert*, 679 S.W.2d 322, 323-24 (Mo.App. 1984) (same); *Baker v.
Saint Francis Hosp.*, --- P.3d ----, 2005 WL 1226073 (Okla. 2005) (same); *Loffland Bros. v.
Baca*, 651 P.2d 431, 432-33 (Colo.App.1982) (same).

[9]*See* cases cited *supra*, note 7.

[10]*See* cases cited *supra*, note 8.

employee who submitted false checks and payment invoices as part of a forgery scheme to

withdraw money from certain client accounts.  When the defrauded client sued First Union to

recover the money it had lost, First Union argued that because the employee was not motivated

by an intent to further First Union's business, the fraud was outside the employee's scope of

employment and hence First Union was not vicariously liable.  In rejecting this argument, the

Supreme Court of Virginia held that "our prior precedents do not support such an interpretation

by implication, and we expressly reject it now."  *Id.*  (internal citations omitted).[11]

　　　While the Supreme Court of Virginia has not embraced the totality of the circumstances

approach with the same clarity with which it has rejected the employee motivation test, the

caselaw nonetheless leaves little doubt that the totality of the circumstances test is Virginia's

preferred approach.  On the same day the Supreme Court of Virginia issued *Gina Chen*, it also

reversed a trial court's grant of summary judgment in a companion case, *Majorana v. Crown*

*Central Petroleum Corporation*.  260 Va. 521 (2000).  *Majorana* presented the question whether

a gas station owner was vicariously liable for an employee who assaulted a customer while on

duty.  The employer denied liability on the ground that the employee acted outside the scope of

his employment.  Noting that the plaintiff had presented evidence that the assault took place at

the regular place of employment during normal business hours, and that the employee committed

the assault while performing the business of his employer for which the victim was the

employer's customer, the Supreme Court of Virginia held that the plaintiff had presented a jury

---

[11]*See also Plummer v. Center Psychiatrists, Ltd.*, 252 Va. 233 (1996) (holding that whether psychologist was acting within the scope of his employment when he had sexual intercourse with his patient was a question for the jury); *Commercial Business Systems, Inc. v. Bellsouth Services, Inc.*, 249 Va. 39 (1995) (holding that whether employee was acting within the scope of his employment when he accepted bribes was a question for the jury).

question with respect to whether the employee was acting within the scope of his employment. *Id.* at 527.[12] *Majorana* reflects the Supreme Court's view that the employee's alleged criminal acts were closely related in time, place, and manner to the employer's business.

Besides confirming the importance of the time and place in which the tort was committed, *Majorana* also reaffirmed a long line of cases in which the Supreme Court of Virginia has looked to objective factors to resolve scope of employment issues. *See, e.g.*, *Tri-State Coach Corp. v. Walsh*, 188 Va. 299, 306 (1948).[13] Specifically, *Tri-State Coach* and its progeny teach that an employee's tortious activity is in the scope of his employment if committed "in the execution of the service for which he was engaged." *See id.* While the Supreme Court of Virginia has not articulated its justification for this conclusion, a review of other courts' decisions in this regard reveals two likely rationales. These decisions collectively explain that the extent to which tortious or other wrongful, intentional conduct "arises out of" the employee's normal employment duties is itself a function of (i) the extent to which the conduct resembled or was incidental to the employee's normal duties;[14] and (ii) the extent to which the employment

---

[12]Neither party in this case claims that there is a triable issue of fact on the scope of employment issue. There is no dispute of fact regarding the time, place, or manner in which Dean embezzled the funds at issue. *See infra* note 17.

[13]*See also Plummer*, 252 Va. at 237; *Commercial Business Systems*, 249 Va. at 44 (same); *Gina Chen*, 260 Va. at 543 (same).

[14]*See, e.g.*, *Gregor by Gregor v. Kleiser*, 111 Ill.App.3d 333 (1982) (battery of party guests may have been within scope of bouncer's normal duties to expel rowdy guests); *Domar Ocean Transp., Ltd., Div. of Lee-Vac, Ltd. v. Independent Refining Co.*, 783 F.2d 1185, 1190 (5th Cir. 1986) (upholding determination that ship captain acted within scope of employment when he stole oil from a vessel he commanded because "purported sale of slops was indistinguishable from legitimate sales of slops routinely made by masters of tanker vessels").

8

situation provided a particular opportunity or incentive for the commission of the tort.[15]  Based

on the combination of (i) the Supreme Court of Virginia's explicit rejection of the employee

motivation approach; and (ii) its emphasis of factors central to the totality of circumstances

approach in resolving scope of employment determinations, it is likely that, if squarely presented

with the question, the Supreme Court of Virginia would apply the totality of the circumstances

approach to scope of employment determinations.[16]

---

[15] *See, e.g.*, *Plains Resources, Inc. v. Gable*, 235 Kan. 580, 588-89 (Kan. 1984) (affirming that employee acted within scope of employment when he sabotaged an oil well, noting that his job duties included supervising other employees engaged in safeguarding the well, maintaining the equipment, and cleaning the job site); *Home Life Ins. Co., New York v. Equitable Equipment Co., Inc.*, 680 F.2d 1056, 1059 (5th Cir. 1982) (noting that false claims submitted by employee were "exaggerations of essentially valid claims," and that the employee's actions "were carefully contrived to fit into his normal duties and the usual course of events"); *Williams v. Alyeska Pipeline Service Co.*, 650 P.2d 343, 349-51 (Alaska, 1982) (assault and battery of worker by union members who were incited by their union steward held to be within scope of employment in view of union steward's special access to company communication facilities that allowed him to organize mob, and whose special authority made members responsive to his suggestions); *Clark v. Skaggs Companies, Inc.*, 724 S.W.2d 545, 550-51 (affirming trial court determination that security guard was within the scope of his employment when he abused his position of authority to detain suspected shoplifters and access private rooms to commit sexual battery and false imprisonment).

[16] Nor is the Fourth Circuit's recent unpublished opinion in *Federal Ins. Co. v. Ward*, — Fed. Appx. — 4th Cir. (January 24, 2006), persuasive to the contrary.  Apart from its non-precedential status, *Ward* relies upon state law precedent that the Supreme Court of Virginia has now explicitly rejected.  Specifically, the *Ward* panel relied on *Kensington Associates v. West*, 234 Va. 430 (1987), in holding that an employee's negligent disposal of cigarette ashes was outside the scope of employment because the "act of flicking ashes into a trash can [were not] performed with the intent to further the employer's interest or from an impulse to carry out the employer's business." *Id.*  In 2000 however, the Supreme Court of Virginia "expressly reject[ed]" the reading of *Kensington* the *Ward* panel adopted.  *See Gina Chen*, 260 Va. at 541-42 ("It should be apparent that the proper application of [scope of employment inquiries] in the context of the doctrine of respondeat superior does not resolve into a simplistic determination that an employee's willful and wrongful act was not done with the intent to further the employer's interest or to benefit the employer in some way.").

The totality of the circumstances test, applied here, compels the conclusion that Dean's embezzlement was within the scope of her employment. This follows from the fact that she could not have committed any of the acts of embezzlement at issue without the facilities and attributes of her office as bookkeeper. While the Supreme Court of Virginia has not addressed this precise issue, it concluded in a very factually similar case that employees' intentional criminal acts could be found to be within the scope of their employment. *See Gina Chen*, 260 Va. at 541-42 (holding that whether bank teller's scheme to deposit forged checks into acquaintance's account was within scope of employment was question for a jury). Noting that factual disputes at the summary judgment stage precluded resolving the issue as a matter of law, the Supreme Court of Virginia remanded the case for a jury determination whether the teller in *Gina Chen* was acting within the scope of his employment. *Id.* at 546. Here by contrast, there is no factual dispute whatsoever about the manner in which Dean embezzled the funds at issue.[17] Rather, the record is pellucidly clear (i) that Dean would not have had access to the funds she embezzled but for her position as bookkeeper; and (ii) that, as Merit's bookkeeper, Dean was responsible for, *inter alia*, facilitating transfers of funds from Merit to its customers, and vice versa, and recording these transfers. Thus, it is clear that Dean used the access and authority inherent in her office to accomplish her embezzlement scheme. For all of these reasons, Dean

---

Further, it is worth noting that primary reliance on the employee motivation factor to limit the scope of employment might yield the anomalous result of excluding from an employee's scope of employment many routine work activities essential to employee productivity, such as using the restroom or getting a drink of water, because these activities are never "performed with the intent to further the employer's interest." *See Ward*, — Fed. Appx. — 4th Cir. (January 24, 2006).

[17] The record includes excerpts from Dean's deposition testimony detailing (i) the scope of her job duties at Merit; and (ii) the manner in which she embezzled monies from Merit. Neither party disputes the veracity of this testimony.

acted within the scope of her employment when she embezzled the funds at issue, and Dean therefore qualifies as an "insured" under the plain terms of the Policy. Accordingly, the Dishonesty Exception applies, and Gulf has no liability to Merit (and therefore KSI) as a result.

The parties in their briefs argue at length about whose conduct is relevant for insurance coverage purposes when negligent conduct of an insured—here, Merit's management—facilitates intentional criminal conduct by a non-insured. KSI insists that the focus should be on the conduct of the named insured, Merit; Gulf maintains that the pertinent conduct is that of the non-insured criminal actor. In the end, it is unnecessary to reach or decide this question—a novel one under Virginia law—because the criminal conduct at issue in this case was committed by a person falling within the Policy's definition of an "insured." Accordingly, this ruling holds only that Dean's criminal conduct was committed during the scope of her employment at Merit, thereby triggering the Dishonesty Exception to the Policy and barring any liability Gulf might have otherwise had.[18]

An appropriate Order will issue.

_____/s/_____
Alexandria, Virginia                              T. S. Ellis, III
February 16, 2006                              United States District Judge

---

[18]Gulf also advances two other arguments in support of its claim that it had no liability under the Policy: (i) that the Breach of Contract Exception also barred KSI from recovering; and (ii) that the KSI judgment does not constitute "damages" under the terms of the Policy. These arguments do not, either individually or collectively, compel the conclusion that Gulf has no liability to KSI under the Policy. Because Gulf prevailed on other grounds, however, it is unnecessary to address these arguments in detail.